## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| **JUAN PABLO RODRIGUEZ DE LOZA,** | § | |
| **URIEL GONZALEZ MENDOZA, and** | § | |
| **MIGUEL VILLASEÑOR PADILLA,** | § | |
| | § | **Civil Action No. 2:20-cv-00079** |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **FABIAN MORALES TRUCKING, LLC,** | § | |
| **and FABIAN MORALES,** | § | **Jury Trial Demanded** |
| | § | |
| **Defendants.** | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

1. This is an action for unpaid wages and contract damages brought by Juan Pablo Rodriguez de Loza, Uriel Gonzalez Mendoza and Miguel Villaseñor Padilla (Plaintiffs), Mexican citizens, who were employed between 2015 and 2019 by Fabian Morales Trucking, LLC and Fabian Morales (Defendants) under the federal H-2A visa guestworker program. Plaintiffs worked for Defendants as heavy tractor-trailer truck drivers primarily hauling grain crops from farms to storage facilities, dairies and feedlots.  Defendants used the H-2A guestworker program for several years and continue to use it to recruit and employ Mexican truckdrivers in their trucking operations.

2. The United States Department of Labor (USDOL) determined in 2017 that Defendants were obligated to pay overtime pay of one- and one-half times the regular rate of pay when Defendant's H-2A employees worked more than 40 hours in a workweek. Despite their promise to comply with the law, Defendants brazenly refused to follow USDOL's decision and continued to pay only regular hourly rates for all of the hours worked from 2017 to the present.  In addition, Defendants paid the adverse effect wage rates (AEWR) for agricultural work ranging

from $11.59 per hour to $12.23 per hour between 2017 and 2019 even though by law Defendants should have paid their employees the prevailing wage rates for heavy tractor truck drivers – between $20.35 to $21.20 per hour. Plaintiffs now seek to recover unpaid prevailing wage rates owed under their contracts, overtime wages owed pursuant to the Fair Labor Standards Act (FLSA), liquidated damages, attorney's fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1337 (interstate commerce); and 29 U.S.C. § 216(b) (FLSA).

4.      This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367 because the claims are so related to the federal claims, they form part of the same case or controversy.

5.      Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

6.      Venue is proper in the Amarillo Division of the Northern District of Texas pursuant to 28 U.S.C § 1391.

## PARTIES

7.      Plaintiffs Juan Pablo Rodriguez de Loza, Uriel Gonzalez Mendoza, and Miguel Villaseñor Padilla were all lawfully admitted to the United States on temporary work visas pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(a), commonly referred to as the "H-2A program."

8.      On information and belief, Defendant Fabian Morales is a natural person residing in Castro County, Texas. Mr. Morales owned and managed Fabian Morales Trucking, LLC and may be served with process in Hart, Texas.

9.    Fabian Morales Trucking, LLC (FMT) is a Texas Limited Liability Company which may be served with process through its registered agent Fabian Morales in Hart, Texas.

## STATEMENT OF FACTS

### A.  THE H-2A VISA PROGRAM

10.    An agricultural employer in the United States may import foreign workers to perform labor of a temporary nature if DOL certifies that: (1) there are insufficient available workers within the United States to perform the job; and (2) the employment of foreign workers will not adversely affect the wages and working conditions of similarly-situated U.S. workers. 8 U.S.C. § 1101(a)(15)(H)(ii)(a). Foreign workers admitted in this fashion are commonly referred to as "H-2A workers."

11.    Agricultural employers seeking admission of H-2A workers must submit a temporary labor certification application to the DOL pursuant to 20 C.F.R. §655.130.  That application requires the employer to set forth the terms and conditions of work that the employer is offering to the foreign workers it seeks to hire.  *Id.*

12.    This application must include a job offer, commonly referred to as a "clearance order" or "job order," complying with applicable regulations, which is used in the recruitment of both U.S. and H-2A workers. 20 C.F.R. §655.121(a)-(c).  The H-2A regulations establish the minimum benefits, wages, and working conditions that must be offered to avoid adversely affecting U.S. workers. 20 C.F.R. §§655.0(a)(2), 655.122, 655.135.

13.    The employer must also make attempts to find and employ U.S.-based workers and demonstrate that no U.S. workers were available for the jobs before the USDOL will certify the employer's applications. 20 C.F.R. §655.161.

14.     If the USDOL determines that the application meets the requirements of the H-2A program, the USDOL will approve the certification application, at which point the employer may petition the Department of Homeland Security for H-2A visas for workers.

### B.  DEFENDANTS' PARTICIPATION IN THE H-2A VISA PROGRAM

15.     Defendants are in the trucking business hauling grain and seed crops and cotton from farms to silos, gins, feedlots and dairies.

16.     On information and belief, starting in 2013 and continuing in multiple years thereafter, Defendants sought to bring foreign workers into the United States under the H-2A visa program at the lowest wage rate possible—well below the local prevailing wage for heavy trucking.

17.     Defendants submitted temporary labor certification applications in multiple years as follows:

a.   USDOL Case Number: H-300-16039-348019 sought admission of 15 "Agricultural Equipment Operators" with the job title "Custom Combiner Grain" for the period of March 20, 2016 to December 31, 2016 ("2016 Application");

b.   USDOL Case Number: H-300-17010-119201 sought admission of 17 "Agricultural Equipment Operators" with the job title "Custom Combiner Grain" for the period March 20, 2017 to December 31, 2017 ("2017 Application");

c.   USDOL Case Number: H-300-18119-523911 sought admission of 19 "Agricultural Equipment Operators" with the job title "Custom Harvesting Truck Driver" for the period June 13, 2018 to January 10, 2019 ("2018 Application");

d.   USDOL Case Number: H-300-19037-52645 sought admission of 16 "Agricultural Equipment Operators" with the job title "Custom Harvesting Truck Driver" for the

period March 31, 2019 to January 10, 2020 ("March 2019 Application");

e.   USDOL Case Number: H-300-19099-690466 sought admission of 5 additional "Agricultural Equipment Operators" with the job title "Custom Harvesting Truck Driver" for the period May 26, 2019 to January 10, 2020 ("May 2019 Application"); and

f.   USDOL Case Number: H-300-19221-003210 sought admission of 4 additional "Agricultural Equipment Operators" with the job title "Custom Harvesting Truck Driver" for the period September 23, 2019 to January 10, 2020 ("September 2019 Application").

18.   As part of the temporary labor certification applications described in paragraph 17, Defendants included job offers or "clearance orders" purporting to comply with applicable H-2A regulations, which are used in the recruitment of both U.S. and H-2A workers. 20 C.F.R. §655.121(a)-(c).

19.   The clearance orders submitted to USDOL by Defendants contained a certification that the clearance orders encompassed all material terms and conditions of the job and described the actual terms and conditions of employment being offered as required by 20 C.F.R. §653.501(d)(3).

20.   Defendants' temporary labor certifications applications as described in paragraph 17, explicitly and implicitly incorporated USDOL regulations at 20 C.F.R. §§655 Subpart B.

21.   USDOL relied on Defendants' representations, accepted Defendants' clearance orders described in paragraph 17, and Defendants were granted permission by USDOL to begin the visa process of importing foreign laborers.

22.   The U.S. Customs and Immigration Services of the Department of Homeland

Security ultimately issued H-2A visas to fill the labor needs described in Defendants' temporary labor certification applications and clearance orders.

23.    Defendants' 2016 Application and 2017 Application claimed that the workers they were seeking would be operating "self-propelled custom class harvesting machines." This description was a misrepresentation. The H-2A workers who worked for Defendants based on the 2016 Application and 2017 Application operated heavy trucks not harvesting machines. They did not actually do the work described in their Application.

24.    USDOL Wage and Hour Division (USDOL-WHD) investigated Defendants and found that they had misled USDOL and incorrectly described the work performed by Plaintiffs and other H-2A workers in 2016.

25.    In fact, USDOL-WHD found that in 2016 Plaintiffs and other H-2A workers exclusively hauled seed and grain from third-party farmers' fields to third-party storage and processing facilities solely in the state of Texas.

26.    USDOL-WHD also found that Defendants had, in their temporary labor certification application, misled USDOL by stating that they were fixed-site agricultural employers when, in fact, they were a labor contractor who provided contractor services for other agricultural employers.

27.    Finally, USDOL-WHD found, as a result of its investigation, that Defendants failed to properly pay its employees overtime wages as required by law.

28.    As a result of USDOL-WHD's investigation, Defendants compensated its workers for unpaid overtime wages for the year 2016. Defendants also certified to USDOL-WHD that they would continue to pay overtime to their H-2A employees.

29.    However, as described below, Defendants – in flagrant violation of the law and

their promises to the federal government – refused to pay Plaintiffs overtime wages at a rate of 1.5 the prevailing wage rate in 2017, 2018, and 2019.

30.     In addition, between 2018 and 2019, Defendants continued misrepresenting material facts regarding the nature of the work to be performed by Plaintiffs and other H-2A workers in their temporary labor certification applications to USDOL.

## C.  PLAINTIFFS' EMPLOYMENT

31. Upon information and belief Defendant FMT employed 7 or more heavy truck drivers in each year between 2016 and 2019 including numerous workers who received H-2A visas as described above.

32. In each year between 2016 and 2019, Defendants' employees drove, among other vehicles, truck-tractors manufactured outside of the state of Texas which hauled trailers manufactured outside of the state of Texas and fueled those vehicles.

33. At all times relevant to this action, Defendants have been an enterprise engaged in commerce within the meaning of the FLSA in that: 1) they had two or more employees driving vehicles manufactured outside the state of Texas; and 2) Defendants' enterprise had at all times relevant to this action annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

34.     Plaintiff Rodriguez de Loza obtained H-2A visas to work for Defendants and worked for Defendants as a heavy truck driver, in pertinent part, from on or about May 2016 to until on or about December 2016, from on or about April 2017 until on or about December 2017, from on or about June 2018 until on or about November 2018.

35.     Plaintiff Gonzalez Mendoza obtained H-2A visas to work for Defendants and worked for Defendants as a heavy truck driver from on or about May 2016 until on or about December 2016 and from on or about June 2018 to on or about December 2018.

36.     Plaintiff Villaseñor Padilla obtained H-2A visas to work for and worked for Defendants as a heavy truck driver from on or about July 2018 until on or about July 2018 until on or about January 2019 and from on or about May 2019 until on or about October 2019.

37.     When Plaintiffs worked for Defendants as truck drivers, Plaintiffs were employed in an enterprise engaged in commerce within the meaning of 29 U.S.C. §§ 203, 206-7.

38.     Defendant Fabian Morales had sole authority to conduct monetary transactions, interact with federal agencies, and conduct general operations of FMT.

39.     Defendant Fabian Morales had the authority to hire and fire workers and, in fact, hired Plaintiffs.

40.     Defendant Fabian Morales supervised, directed and controlled the work of Plaintiffs by assigning the locations where and the time and dates the work was to be performed and instructing Plaintiffs and other workers on how to do the work.

41.     Defendant Fabian Morales signed and delivered paychecks to Plaintiffs and other workers.

42.     Defendants provided all the vehicles, tools, and equipment necessary for Plaintiffs and other workers to perform the work.

43.     Defendants owned or controlled the worksite where the vehicles, tools, and equipment for the work were stored.

44.     Defendant Fabian Morales determined the terms of the work contracts under which Plaintiffs were employed, which were also mandated in large part by federal law.

45.     Defendant Fabian Morales set pay rates for Plaintiffs and decided which deductions or charges they would take from Plaintiffs.

46.     Defendant Fabian Morales controlled and maintained Plaintiffs' housing.

47.     At all times relevant to this action, Defendants were the "employers" of each Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d).

48.     At all times relevant to this action, Defendants were each an "employer" and "joint employer" of each H-2A worker within the meaning of 20 C.F.R. §655.103(b).

49.     By choosing to voluntarily participate in the H-2A program between 2016 and 2020, Defendants were liable for complying with all federal regulations that pertain to the H-2A program.

50.     Defendants offered terms of work to Plaintiffs that included, among other things: (1) the terms offered in the clearance orders submitted by Defendants to USDOL to obtain permission to acquire foreign workers; (2) the terms of work set forth in the regulations governing Plaintiffs' visas, 20 C.F.R. §§655.00 *et seq*; and (3) the federal requirement that Defendants comply with all applicable federal, state, and local employment-related laws.

51.     Specifically, each of the clearance orders for 2016, 2017, 2018, and 2019 offered, among other things, the following terms of work:

    a.   Pay at "a wage that is the highest of the adverse effect wage rate in effect at the time the job order is placed, **the prevailing hourly or piece rate**, the agreed-upon collective bargaining rate (CBA), or the Federal or State minimum wage." 20 C.F.R. § 655.120 (emphasis added);

    b.  Reimbursement, at the 50%-point of the contract's term, to the workers of the reasonable costs of transportation and subsistence incurred by the Plaintiffs in traveling from their homes in Mexico to the place of employment in Hart, Texas; and

    c.  Return transportation and subsistence from the place of work to the point of recruitment paid upon completion of the contract or upon separation without cause.

52. During the course of Plaintiffs' employment, Defendants:

    a.  Failed to pay Plaintiffs the prevailing wage for the work performed;

    b.  Failed to pay overtime pay of one- and one-half times the regular rates of pay for each hour worked over 40 in a workweek;

    c.  Failed to reimburse at the 50%-point of the contract's term, the full reasonable costs of transportation and subsistence incurred by Plaintiffs in traveling from their homes in Mexico to Defendants' place of employment; and

    d.  Failed to pay for Plaintiffs' full return transportation from the place of work to the point of recruitment upon completion of the contract or separation without cause.

53.    Plaintiffs diligently conducted their job duties for Defendants for all time periods in which they worked for Defendants.  On a daily basis, Plaintiffs used 18-wheeler trucks to haul grain and seeds from third-party farms to various third-party processing and storage facilities.

54.    In most work weeks, Defendants caused Plaintiffs to work in excess of 40 hours per week.  In fact, Plaintiffs regularly worked more than 84 hours per week.

55.    Throughout their employment, Plaintiffs were paid only the adverse effect wage rate ("AEWR") for agricultural workers for every hour that they worked as heavy truck drivers, including the hours they worked in excess of 40 in a workweek.

56.     The AEWRs on Defendants' 2016, 2017, 2018 and 2019 Applications were $11.15 per hour, $11.59 per hour, $11.87 per hour and $12.23 per hour, respectively.  However, pursuant to their contract, Defendants had agreed to and offered to pay prevailing hourly wage rates in effect for the type of work, heavy truck driving.  The prevailing wage rates for heavy and tractor-trailer truck drivers in Castro County, Texas in 2016, 2017, 2018 and 2019 ranged from $20.35 to $21.20 an hour.

57.     By paying AEWR rates for all hours worked, Defendants failed to pay Plaintiffs the appropriate prevailing wage for their work pursuant to their contract.

58.     Defendants also failed to pay any overtime wages of one-and-one-half times the prevailing hourly wage rate for heavy and tractor-trailer truck drivers promised to Plaintiffs under the terms of their contract for each hour they worked above 40 in a workweek.  Defendants only paid the AEWR for all hours, even those hours worked over 40 in a workweek.  This pay scheme violates the FLSA.

59. At all times relevant to this action, Defendants knowingly and willfully failed to pay the required overtime compensation due to Plaintiffs.

60. At all times relevant to this action, Defendants paid Plaintiffs at a rate that was well below the prevailing wage for Heavy and Tractor Trailer Drivers in the Castro County region – a market wage of between $20 and $22 between 2016 and 2019.

61. For example, in several weeks between April 2017 and July 2017, Plaintiff Rodriguez de Loza worked around 84 hours for a weekly pay of $973.56.  For the 44 hours of overtime, under the FLSA the applicable pay rate he should have been paid was $31.80 - one- and one-half times the prevailing wage rate of $21.20 per hour – rather than the $11.15 per hour he was paid.

62. Therefore, for these 84-hour workweeks, Defendants owed Rodriguez de Loza around $378.40 in unpaid prevailing wages for the first 40 hours worked and $879.34 in unpaid overtime for the additional 44 hours of overtime.

63. Similarly, for example, in several weeks between July 2018 and January 2019, Plaintiff Gonzalez Mendoza worked around 84 hours for a weekly pay of $997.08. For the 44 hours of overtime, under the FLSA the applicable pay rate he should have been paid was $30.53 - one- and one-half times the prevailing wage rate of $20.35 per hour – rather than the $11.15 per hour he was paid.

64. Therefore, for these 84-hour workweeks, Defendants owed Gonzalez Mendoza around $339.20 in unpaid prevailing wages for the first 40 hours worked and $820.82 in unpaid overtime for the additional 44 hours of overtime.

65. Similarly, for example, in several weeks between around June 2019 and October 2019, Plaintiff Villaseñor Padilla worked around 84 hours for a weekly pay of $1027.32. For the 44 hours of overtime, under the FLSA the applicable pay rate he should have been paid was $31.46 - one- and one-half times the prevailing wage rate of $20.97 per hour – rather than the $11.15 per hour he was paid.

66. Therefore, for these 84-hour workweeks, Defendants owed Villaseñor Padilla around $349.60 in unpaid prevailing wages for the first 40 hours worked and $845.90in unpaid overtime for the additional 44 hours of overtime.

67. Defendants engaged in the same pay scheme described in paragraphs 61 to 66 in most workweeks from 2017 to 2019.

## FIRST CAUSE OF ACTION:  FLSA OVERTIME WAGES

68. Plaintiffs reassert and incorporate by reference all of the above-numbered paragraphs.

69. Plaintiffs were employed by Defendants Fabian Morales and FMT within the meaning of the FLSA.

70. During the relevant period, Defendants violated 29 U.S.C. §§ 207 *and* 215(a)(2), by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA as aforesaid, for workweeks longer than 40 hours without compensating such employees for their work in excess of forty hours per week at rates no less than one-and-a-half times the regular rates for which they were employed.

71. By failing to pay Plaintiffs overtime wages in each work week, Defendants willfully violated Plaintiffs' rights under the FLSA, 29 U.S.C. § 207, for which Plaintiffs are entitled to relief pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION:  BREACH OF CONTRACT

72. Plaintiffs re-allege and incorporate by reference all of the above-numbered paragraphs.

73. By offering work to Plaintiffs, which Plaintiffs accepted, Defendants entered into valid and enforceable work contracts with Plaintiffs Rodriguez de Loza, Gonzalez Mendoza, and Villaseñor Padilla.

74. The work contracts formed by the DOL-approved labor certifications included a promise by Defendants, the employers of the H-2A workers, to abide by federal law and to pay the prevailing wage rate for heavy and tractor-trailer truck drivers.  The work contracts also included a promise to reimburse all H-2A employees for the costs of preemployment expenses such as transportation expense and full transportation expense from the job location to the point of recruitment.

75. Plaintiffs performed all work they were called upon by Defendants to perform and therefore met their material contractual obligations of employment.

76. As described herein, Defendants failed to perform their obligations under their employment contracts with each Plaintiff and materially breached contractual obligations owed to each Plaintiff.

77. Plaintiffs suffered injuries as a result of Defendants' breach for which they are entitled to relief under the common law of Texas.

78. Defendant FMT is liable to Plaintiffs for Plaintiffs' damages and Fabian Morales is liable to Plaintiffs for Plaintiffs' damages, and attorney's fees and costs under Tex. Civ. Prac. & Rem. Code Ann. §§ 38.001.

## THIRD CAUSE OF ACTION:  QUANTUM MERUIT

79. Plaintiffs re-allege and incorporate by reference all of the above-numbered paragraphs.

80. In the alternative, if the Court finds that the work contract did not contain a lawful wage applicable to the work duties performed by Plaintiffs (because the real work Defendants demanded of Plaintiffs was not covered by the description in Defendants' ETA Forms 9142A), the contract wage that was set forth in the 9142A is unenforceable for that work. Instead, Plaintiffs are alternatively entitled to recover the prevailing wage applicable to those tasks as a matter of *quantum meruit*.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

    a. Cite Defendants to appear and answer herein;

    b. Declare that Defendants violated the rights of Plaintiffs under FLSA, and breached their contracts with Plaintiffs;

    c. Award Plaintiffs damages for their unpaid overtime wages, and an equal amount in liquidated damages under FLSA;

d.   Award Plaintiffs their actual, incidental, and consequential damages resulting from Defendants' breaches of contracts;

e.   Award Plaintiffs costs and attorney's fees pursuant to 18 U.S.C. § 1964(c), 29 U.S.C. § 216(b), and § 38.001 of the Texas Civil Practice and Remedies Code;

f.   Award Plaintiffs compensatory damages as described above;

g.   Award Plaintiffs punitive damages;

h.   Award Plaintiffs pre- and post-judgment interest; and

i.   Award Plaintiffs such other relief as this Court deems just and proper.

Respectfully submitted,

TEXAS RIOGRANDE LEGAL AID, INC.

*/s/ Lakshmi Ramakrishnan*
Lakshmi Ramakrishnan
Texas Bar No. 24037324
Texas RioGrande Legal Aid, Inc.
301 South Texas Ave.
Mercedes, Texas 78570
Telephone: (956) 447-4850
Fax: (956) 968-8823
**lramakrishnan@trla.org**

*/s/ Christopher Benoit*
Christopher Benoit*
Texas Bar No. 24068653
Texas RioGrande Legal Aid, Inc.
1331 Texas Ave.
El Paso, Texas 79901
Telephone: (915) 585-5100
Fax: (915) 544-3789
**cbenoit@trla.org**

*PRO HAC VICE APPLICATION PENDING

WOOD LAW FIRM, LLP

*/s/ Channy F. Wood*
Channy F. Wood
SBN 00791954
E-mail: cwood@woodlawfirm-tx.com
Leslie Owens
SBN 24073561
E-mail: lowens@woodlawfirm-tx.com
Physical: 610 S.W. 11th Avenue (79101)
Mailing: P.O. Box 1439
Amarillo, Texas 79105-1439
Telephone: 806.372.9663
Facsimile: 806.372.9664

ATTORNEYS FOR PLAINTIFFS